UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

- against - Case No. 1:24-cr-00225 (DLI)

NICHOLAS ARCURI,

Defendant.

– – – – – – – – – – – – – – – – X

# GOVERNMENT'S SENTENCING MEMORANDUM

In accordance with the principles set forth in the United States Sentencing Guidelines and Title 18 United States Code Section 3553(a), and for the reasons discussed below, the government respectfully recommends that the Court sentence the defendant to 18 months of imprisonment. For seven years, the defendant engaged in a scheme in which he cashed $3.2 million in customer checks, while maintaining an unreported cash payroll totaling $2.6 million. He concealed these cash gross receipts and under-the-table wages from his tax preparer and payroll processor. In so doing, the defendant caused false tax returns to be filed with the Internal Revenue Service ("IRS") and failed to pay income and payroll taxes. Based on these facts, the need for deterrence, and to avoid sentencing disparities, the government recommends a prison sentence in this case.

## I. Background

### A. Procedural History

On August 5, 2024, pursuant to a plea agreement, the defendant waived indictment and pleaded guilty to a one-count Bill of Information charging him with failure to collect, truthfully

account for, and pay over payroll taxes, in violation of 26 U.S.C. § 7202. ECF Nos. 4, 5; Presentence Investigation Report ("PSR") ¶ 1. On August 8, 2024, the Court granted the parties' joint motion for the defendant to make pre-sentence restitution payments, which he paid in full. ECF Nos. 11, 12, 14.

### B. Factual Background

#### 1. Background on Payroll Taxes

Payroll taxes generally consist of three distinct components: (1) the employees' share of Federal Insurance Contribution Act ("FICA") taxes; (2) the employer's share of FICA taxes; and, (3) the federal income tax on the employees' wages. The first and third taxes form the basis of the 26 U.S.C. § 7202 charge in this case. Under the Internal Revenue Code ("IRC"), an employer must withhold certain taxes from wages paid to an employee and pay those taxes over to the IRS on his or her behalf. These are called "trust fund taxes" because the employer holds them in trust for the U.S. Treasury. *See Slodov v. United States*, 436 U.S. 238, 243 (1978) ("the withheld sums are commonly referred to as 'trust fund taxes,' reflecting the Code's provision that such withholdings or collections are deemed to be a 'special fund in trust for the United States.'")

The first component of the trust fund taxes consists of the federal income tax that the employee owes on his or her wages. *See Noel v. New York State Office of Mental Health Central New York Psychiatric Center*, 697 F.3d 209, 213-14 (2d Cir. 2012). The second component consists of FICA taxes that include Medicare and Social Security taxes calculated as a percentage of an employee's wages and are that are withheld[1] from those wages. *See id.* The

[1] Employers have an equal and separate obligation to pay a FICA tax on employee wages. *See* 26 U.S.C. § 3111. This "employer portion" is included in relevant conduct for tax loss in this case.

employer must account for these taxes on an IRS Form 941, Employer's Quarterly Federal Tax Return, which must be filed one month after the close of each fiscal quarter.

Employees whose cash wages are unreported and for whom FICA taxes are not paid stand to receive lower Social Security benefits than they would if their wages were properly reported and their FICA taxes were paid. *See United States v. Lucidonio*, 699 F.Supp.3d 361, 373 (E.D. Pa., 2023) ("the impact of a fraudulent withholding scheme does not just affect income tax, but also Social Security and Medicare, critically important social programs.")

2. Offense of Conviction and Relevant Conduct

The defendant pleaded guilty to one count of failure to collect, truthfully account for, and pay over trust fund taxes on behalf of his employees in violation of 26 U.S.C. § 7202. This count of conviction corresponds to the second fiscal quarter of 2021, which ended on June 30 of that year. However, the defendant's payroll tax misconduct extended from 2015 to 2021 and involved filing numerous false Forms 941 with the IRS. *See* PSR ¶ 7 (table detailing reported wages, unreported cash wages, and tax loss). The tax loss associated with this misconduct totaled $486,753.66. *Id.*

The defendant is the part owner and principal operator of a family-owned upholstery manufacturing business named Capri Upholstery Manufacturing or Capri Upholstery Custom Furnishings LLC ("Capri".) PSR ¶ 3. Capri employed a payroll processing company to prepare payroll and the quarterly Forms 941. The defendant was the primary contact for the payroll processor. The processor prepared the paychecks and Forms 941 based upon information provided by the defendant. By way of example, Capri reported six employees on its payroll tax return for the second quarter of 2021. That Form 941 reported only about $17,000 in wages paid

to employees, with only about $10 in withheld federal income taxes, and about $2,600 in FICA taxes.

| | | | |
|---|---|---|---|
| 1 | Number of employees who received wages, tips, or other compensation for the pay period including: *June 12* (Quarter 2), *Sept. 12* (Quarter 3), or *Dec. 12* (Quarter 4) | 1 | 6 |
| 2 | Wages, tips, and other compensation | 2 | 17,012.55 |
| 3 | Federal income tax withheld from wages, tips, and other compensation | 3 | 9.58 |
| 5e | **Total social security and Medicare taxes.** Add Column 2 from lines 5a, 5a(i), 5a(ii), 5b, 5c, and 5d | 5e | 2,602.98 |

However, the Forms 941 filed by the defendant failed to include the under-the-table cash wages he paid to his employees. The defendant thereby concealed a cash payroll of $2.6 million over the seven-year period between 2015 and 2021. A majority of the cash was generated by taking customer checks to a check cashing institution. In the end, no taxes were withheld from the cash wages and those cash payments were not reported to the IRS.

In order to track the unreported cash payroll, the defendant created a handwritten cash payroll ledger. The defendant voluntarily furnished the ledger during an interview with the Special Agents of IRS-Criminal Investigation.[2]

The tax harm caused for the second quarter of 2021 during the defendant's scheme is demonstrated with reference to this cash payroll ledger. The ledger reveals that the true amount of wages paid for the second quarter of 2021 was not the $17,012 reported to the IRS – but approximately $148,629. By these machinations, the defendant paid unreported cash wages

[2] Although not initially forthcoming when the Special Agent first approached him in March 2022, the defendant, over two subsequent interviews, admitted misconduct and provided incriminating records, including the cash payroll ledger. Through his attorney, the defendant cooperated fully in the investigation, and indicated his intention to enter into a plea agreement.

totaling about $574,000 in 2021 alone. *See* PSR ¶ 7.



| April | 2 | 9 | 16 | 23 | 30 |
|---|---|---|---|---|---|
| Ricky | 1500 | 1500 1 DAY | 1500 | 1500 | 1500 |
| Gianni | 1500 | 1500 | 1500 | 1500 | 1500 |
| Steven | 1500 | 1500 1 DAY | 1500 | 1500 | 1500 |
| Mom + Dad | 1100 | 1000 | 1000 | 1000 | 1000 |
| Lenny | 800 | 800 | 800 | 300 500 check | 5 days 1000 |
| Gonzalo | 1100 | 1200 | -1 day 960 | 1200 | 1200 |
| Rodrigo | 720 | 720 | -2 day 432 | 2 DAY 432 | -2 day 432 |
| Patricio | 1100 -DAY 900 | 1100 | 1100 | 1100 -500 check 600 | 1100 |
| George | 1200 | 1200 | sat -1 day 1200 | 1200 -500 check 700 -65 635 | 1200 |
| Miguel | 700 | 700 1 DAY | 700 | 700 | 700 |

***Handwritten cash payroll to employees and relatives for the month of April 2021***

3. Relevant Conduct: Failure to Pay Individual Income Taxes

As a Subchapter S Corporation, Capri reported its income and expenses on an IRS Form 1120-S, which is required to be filed annually. An "S Corporation" does not pay taxes on its income. Instead, the income flows through to the owners of the business. That business income should be reported on the owners' individual tax returns.

By concealing $3.2 million in cash gross receipts, the defendant caused Capri to file false Forms 1120-S for 2015-2021. During those seven years, the defendant also filed false Form 1040 individual tax returns for himself. His Forms 1040 were false because the defendant did not report the true flow-through income of Capri, including cash he paid to himself and customer checks deposited directly into his personal bank account.

Thus, in addition to his payroll tax fraud, the defendant's individual income tax misconduct resulted in a total of about $529,000 in unreported income with associated tax harm of $148,745. *See* PSR ¶ 7. The total tax loss of $635,498.66 in this case is the sum of the $486,753.66 in payroll taxes plus the $148,745 of income taxes the defendant should have paid between 2015 and 2021. *Id.*

## II. The Court Should Sentence Defendant to 18 Months in Prison

Sentencing begins with a properly calculated United States Sentencing Guidelines range. *Gall v. United States*, 552 U.S. 38, 48-50 (2007). After calculating the Guidelines range, the sentencing court must consider the resultant sentencing range along with factors listed in 18 U.S.C. § 3553(a) before arriving at the final sentence.

To the extent the Court is called upon to make findings of fact relevant to sentencing, those findings must only satisfy the preponderance of the evidence standard. *United States v. Gaskin*, 364 F.3d 438, 464 (2nd Cir. 2004). In making such findings, courts "are not restricted to

information that would be admissible at trial. Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy." *United States v. Simmons*, 164 F.3d 76, 79 (2d Cir. 1998)(quotation marks omitted). The Court may also rely on undisputed factual findings set forth in the Presentence Investigation Report. Fed. R. Crim. P. 32(i)(3)(A).

After calculating the applicable Guidelines range, the sentencing court must then consider "the factors set forth in [18 U.S.C.] § 3553(a)." *Peugh v. United States*, 569 U.S. 530, 536 (2013). Here, the Section 3553(a) sentencing factors demonstrate the need for a meaningful sentence within the Guidelines range.

### A. Applicable Guidelines Range

The government agrees with the defendant (Plea Agreement ¶ 2) and U.S. Probation[3] (PSR ¶¶ 12-22) that the following Guidelines calculation applies:

| | | |
|---|---|---|
| Base Offense Level (tax loss of $635,498) (U.S.S.G. §§ 2T1.6(a), 2T4.1(H)) | | 20 |
| Less: | Adjustment for Certain Zero-Point Offenders (U.S.S.G. § 4C1.1) | -2 |
| Less: | Acceptance of Responsibility | -2 |
| Less: | Government motion for a further one point reduction | -1 |
| Total Offense Level: | | 15 |

[3] The government objects to the "U.S. Probation Department Sentence Recommendation," dated November 26, 2024, of three years' probation and a $25,000 fine. The defendant should receive a Guidelines sentence. The fact that the defendant had the wherewithal to finally pay the taxes he should have paid years ago should not qualify him for a non-custodial sentence. That the defendant promptly pleaded guilty once his case was referred by the IRS for criminal prosecution has already been taken into account under U.S.S.G. §3E1.1 by means of the three-level decrease for acceptance of responsibility. The non-violent nature of tax crimes is similarly taken into account under the applicable U.S.S.G. §2T1.6. The fact that the defendant is a "first-time offender" is likewise accounted for under the Guidelines inasmuch as (1) he falls under Criminal History Category I on the sentencing table; and (2) he has already received the two-level "Zero-Point Offender" reduction under U.S.S.G. § 4C1.1.

The government agrees the defendant falls within Criminal History Category I. PSR ¶ 25. The total offense level of 15 corresponds to a Guidelines range of 18 to 24 months' incarceration. The government has agreed to request a sentence at the low end of the Guidelines range as determined by the Court. Plea Agreement ¶ 5(b).

**B. Tax Crimes Are Serious Offenses**

Under Section 3553(a), the Court considers the "nature and circumstances of the offense," as well as the "seriousness of the offense." These factors support the imposition of a Guidelines sentence in this case.

The defendant has pleaded guilty to violating Section 7202 of the IRC. The IRC is codified at Title 26 of the United States Code. Subchapter A of Chapter 75 of Title 26 defines 18 different criminal offenses. The most serious of these violations carry a statutory maximum prison term of five years. Section 7202 is among these crimes, with a maximum penalty of five years' incarceration, three years of supervised release, a fine of $250,000, or twice the loss caused by the offense. *See* 26 U.S.C. § 7202; 18 U.S.C. §§ 3571(b)(3) and (d), 3583(b)(2).

Courts and policymakers have repeatedly emphasized that tax crimes are serious and that sentencing courts need to treat them accordingly. *See, e.g.*, *United States v. Engle*, 592 F.3d 495, 501 (4th Cir. 2010) (citing U.S.S.G. Ch. 1., Pt. A, introductory cmt. 4(d) (1998)) ("[T]he policy statements issued by the Sentencing Commission make it clear that the Commission views tax evasion as a serious crime and believes that, under the pre-Guidelines practice, too many probationary sentences were imposed for tax crimes."); *see also*, *United States v. Zukerman*, 897 F.3d 423, 427 (2d Cir. 2018)(internal quotations omitted)(affirming sentence of 70 months' incarceration and $10 million fine where district court explained that "tax crimes represent an

especially damaging category of criminal offenses, which strike at the foundation of functioning government.")

Our nation and society depend upon the tax system, and that system in turn depends on individuals and employers honestly reporting their tax liabilities; as one court has put it, "the Federal tax structure is the ultimate honor system." *Turnham v. C.I.R.*, 979 F.3d 1322, 1323 (11th Cir. 2020); *see also Compania General de Tabacos de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100 (1927) (Holmes, J., dissenting) ("Taxes are what we pay for civilized society. . . .").

Tax crimes undermine the integrity of the tax system, just as lies undermine any system built on trust. Criminal tax cheats contribute to the annual "tax gap"—the difference between what is owed and what is paid nationwide. The tax gap is estimated at $696 billion for Tax Year 2022. *See IRS, The Tax Gap* (accessed January 4, 2024), https://www.irs.gov/statistics/irs-the-tax-gap (including $514 billion in unpaid individual income taxes and $127 billion in unpaid employment taxes.)

The defendant's long-running tax crimes are serious. For seven years, he engaged in a scheme that defrauded the IRS of hundreds of thousands of dollars. By means of a cash payroll and false payroll tax returns, the defendant misappropriated money that was supposed to be paid into the U.S. Treasury and the Medicare and Social Security systems.

### C. A Prison Sentence Is Necessary to Achieve Deterrence

The defendant operated his criminal scheme for seven years. His crime was not a spur-of-the-moment, irrational act. It was the result of a deliberate, rational calculation: that the benefit of the fraud outweighed the risk of getting caught and significantly punished. Such a calculus is the reason general deterrence is paramount in sentencing for white-collar offenses. "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden

crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.' Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After Booker*, 47 WM. & MARY L. REV. 721, 724 (2005)). This is especially true for criminal tax violations, of which prosecutions are relatively rare. "Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying th[e] guidelines." U.S.S.G., Ch. 2, pt. T, intro. cmt. As the Fourth Circuit has noted, "The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path." *United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2011).

The U.S. tax system relies on citizens and employers to accurately calculate, report, and pay their tax liabilities every year. In fiscal year 2023, the IRS received 36 million payroll tax returns, and 163 million individual income tax returns. 2023 IRS Data Book, Table 2.[4] The IRS simply cannot review all tax returns for accuracy. And due to the sheer numbers involved and limited resources, only a small portion of tax offenders are pursued criminally. The IRS Criminal Investigation program initiated just 2,676 investigations of tax crimes in fiscal year 2023. *Id.* at Table 26.

It should not be the case that Americans who dutifully comply with their tax obligations are somehow being naïve or gullible, while tax cheats like the defendant appear

[4] Available at https://www.irs.gov/statistics/soi-tax-stats-irs-data-book-index-of-tables.

sharp or savvy for lying on their tax returns and failing to pay what they owe. In order to avoid such a perception, law-abiding taxpayers should see incarceration imposed in cases like this one.

### D. A Guidelines Sentence Will Avoid Unwarranted Sentencing Disparities

In addition to achieving the goal of deterrence, a Guidelines sentence in line with the government's recommendation will help prevent unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). Fashioning the Guidelines for tax offenses, the Sentencing Commission sought not only to achieve consistent sentences for similar tax crimes, but also to eliminate disparities in sentencing between white-collar offenses and equally serious non-white-collar offenses. As former Justice Breyer, an original member of the Sentencing Commission, explained:

> The Commission found in its data significant discrepancies between pre-Guideline punishment of certain white-collar crimes, such as fraud, and other similar common law crimes, such as theft. The Commission's statistics indicated that where white-collar fraud was involved, courts grant probation to offenders more frequently than in situations involving analogous common law crimes; furthermore, prison terms were less severe for white-collar criminals who did not receive probation. To mitigate these discrepancies, the Commission decided to require short but certain terms of confinement for many white collar offenders, including tax, insider trading, and antitrust offenders, who previously would have likely received only probation.

*See* Breyer, "The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest," 17 HOFSTRA L. REV. 1, 20 (1988).

The case of *United States v. Denko*, 20-CR-15 (E.D.N.Y.) is similar to this case. Denko owned and operated a mechanical contracting business. Like the defendant here, Denko cashed checks constituting gross receipts of his business to fund an under-the-table cash payroll. Also like the defendant in this case, Denko concealed this conduct from his accountant and caused the preparation and filing of false tax returns. The tax loss in *Denko* was $732,462. His Guidelines

range was 27 to 33 months' imprisonment. Denko received a 20-month sentence.

The case of *United States v. Rodriguez*, 19-CR-168 (D. NH) is also similar to this case. Rodriguez owned and operated a drywall business. Like this defendant, Rodriguez cashed checks he received from his customers. Also like the defendant here, Rodriguez used the cash to pay himself and operate a cash payroll. The tax loss in that case was $416,163, with Guidelines range of 18-24 months. Rodriguez received an 18-month sentence.

The defendant's criminal conduct warrants a prison sentence like those imposed in the similar cases above.

**E. Defendant's History and Characteristics Support a Guidelines Sentence**

Section 3553(a)(1) also instructs the Court to consider a defendant's history and characteristics in fashioning a reasonable sentence. The defendant was raised in a "middle-income" family without "significant financial struggles," and educated in a "private Catholic School." PSR ¶ 32. Unlike many criminal defendants, the defendant's decision to commit crime does not appear to be mitigated by a significantly disadvantaged background, such as a childhood marred by abuse or a broken family structure. *See* PSR ¶¶ 32-42.

To the contrary, the defendant has no excuse for his misconduct. The defendant and his wife have a net worth of almost $4 million. PSR ¶ 47. He owns two houses. *Id.* The defendant was more than able to pay the taxes he owed on behalf of himself and his employees. Unlike some business owners, the defendant did not fall behind on his payroll taxes in a misguided effort to keep his business afloat, or to pay the bills at home. *See* PSR ¶ 47 (reflecting a cash flow of $8,360, after expenses, per month). Rather, the defendant's business model was built upon under-the-table cash payments to his employees, false quarterly payroll tax returns and false corporate tax returns. Through his fraud, the defendant maintained his lifestyle at the

expense of the U.S. Treasury and the Medicare and Social Security programs.

## III. Restitution

As part of his plea agreement, the defendant agreed to pay restitution to the IRS in the amount of $625,498. Plea Agreement ¶ 7. Pursuant to 18 U.S.C. § 3663(a)(3), a sentencing court may order restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3). Given that the defendant fully satisfied his restitution obligations, the government requests that the Court issue a restitution order directing the defendant's restitution payments to be sent to the IRS.

## IV. Conclusion

For the reasons stated herein, the government respectfully recommends that the Court sentence the defendant to a Guidelines sentence of 18 months' imprisonment followed by 1 year of supervised release.

Respectfully submitted,

David A. Hubbert
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

*/s/ Jeffrey A. McLellan*
JEFFREY A. McLELLAN
RICHARD J. KELLEY
Trial Attorneys
U.S. Department of Justice, Tax Division

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification to counsel of record for the defendant.

*Jeffrey A. McLellan*
JEFFREY A. McLELLAN
Trial Attorney