

**LAW OFFICES OF**
**ROBERT E. BROWN, P.C.**

www.RobertBrownLaw.com

14 Wall Street, 20th FL New York, NY 10005  Tel. 212.766.9779
1200 South Avenue - Suite 201, Staten Island, NY 10314  Tel. 718.979.9779  Fax. 718.979.9784
RBrown@RobertBrownLaw.com

January 13, 2025

<u>**VIA ECF AND US MAIL**</u>
Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Re:*              *USA v. Nicholas Arcuri*
                   Case No: 24-CR-00225 (DLI)

Dear Judge Irizarry:

As counsel for Defendant Nicholas Arcuri, I respectfully submit this letter in advance of his sentencing, which is scheduled for January 23, 2025.  Mr. Arcuri pled guilty to the sole count of the Information charging him with failure to collect, truthfully account for, and pay payroll taxes in violation of 26 U.S.C. § 7202.  For the following reasons, a below-Guidelines sentence of 3 years of probation would be sufficient, but not greater than necessary to comply with the purposes of sentencing.

**I. THE NATURE AND CIRCUMSTANCES OF THE INSTANT OFFENSE**
**(18 U.S.C. § 3553(a)(1))**

On August 5, 2024, Mr. Arcuri pled guilty before Your Honor to the only count of a single-count Information, which charges that on July 31, 2021, Defendant, being the president, part-owner and principal operator of Capri Upholstery Custom Furnishings LLC ("Capri"), and thereby being required to collect, truthfully account for and pay over to the IRS federal income taxes and FICA taxes from the total taxable wages of employees of Capri, together with others, did fail to collect, truthfully account for and pay over to the IRS federal income and FICA taxes which should have been withheld from the total taxable wages of the employees of Capri in the approximate amount of $11,370, knowing that such federal income taxes and FICA taxes were due and owed, in violation of 26 U.S.C. § 7202.  The guilty plea was accepted by Your Honor on August 5, 2024. *See* Presentence Investigation Report ("PSR") at ¶1.

The IRS agent calculated the total tax loss of $635,498.66, which consists of $486,753.66 in payroll taxes plus $148,745 in personal income taxes from the years 2015 through 2021 (the "Tax Loss"). Mr. Arcuri does not dispute the amount of the Tax Loss. On August 8, 2024, Your Honor granted the parties' joint motion for Mr. Arcuri to make pre-sentence restitution payments. ECF Nos. 11, 12, 14. On August 9, 2024, Mr. Arcuri paid the entire tax loss of $635,498 in full. *See* PSR Addendum at p.1.

## II. MR. ARCURI'S HISTORY AND CHARACTERISTICS
## (18 U.S.C. § 3553(a)(l))

### A.    Mr. Arcuri's Family Background and Upbringing

Nicholas Arcuri was born on December 11, 1972, in Brooklyn, New York to the marital union of Salvatore Arcuri (recently deceased) and Linda Arcuri (nee DeProspo, age 73). Mr. Arcuri's father is the one who established their family upholstery business in 1972. Mr. Arcuri's father died suddenly about two weeks ago, on December 29, 2024, after a recurrence of cancer. He retired from the family business in 2015. Mr. Arcuri's mother is a homemaker, but also has previously assisted with the family business. Mr. Arcuri's mother was diagnosed with Parkinson's disease in 2023. The parents, prior to the father's death, resided in Staten Island, New York and are/were aware of the instant legal situation, and maintain/maintained their support for Defendant. *See* PSR at ¶30. A letter from Mr. Arcuri's mother, Linda Arcuri and father Salvatore Arcuri, dated December 20, 2024 and a letter from just his mother, Linda Arcuri, dated January 8, 2025 are attached hereto as **Exhibit A**.

Mr. Arcuri is one of three children from his parents' union. Gianni Arcuri, age 51, (Mr. Arcuri's twin brother), resides in Staten Island, New York with his wife and one child. He co-owns Capri and is also an employee. A letter of support from Gianni Arcuri is attached hereto as **Exhibit B**. Steven Arcuri, age 40, (Mr. Arcuri's younger brother) resides in Staten Island, New York as well with his wife and one child. He co-owns Capri and is also an employee. A letter of support from Steven Arcuri is attached hereto as **Exhibit C.** My client shares close relationships with his siblings, both of whom are aware of his arrest and conviction for the instant offense and remain supportive. *See* PSR at ¶31. Mr. Arcuri was raised by his parents under middle-income circumstances. He and his siblings had a comfortable upbringing. *See* PSR at ¶32. In 1995, Mr. Arcuri received a bachelor's degree from St. John's University. *See* PSR at ¶43.

Mr. Arcuri is a life-long resident of New York. He resided with his parents and siblings in Brooklyn until 1999. In 1999, he married Lisa Arcuri, who is currently age 55. A letter of support from Lisa Arcuri is attached hereto as **Exhibit D.** When they got married, they purchased their first home in Staten Island. In 2008, they sold their first home and purchased another home in Staten Island. They sold that property in 2020 and purchased their current residence. Lisa Arcuri recently retired from her employment as an elementary school principal within the New York City Department of Education ("DOE"). Post-retirement, she started working part-time for the DOE as a consultant for principals.

The Arcuri's have one adult child, Sierra Arcuri, age 23, who resides with them. A letter of support from Sierra Arcuri is attached hereto as **Exhibit E.** Sierra Arcuri is single with no children and is employed by the DOE as a high school teacher. Sierra is also in the process of obtaining her master's degree. *See* PSR at ¶33. Both Lisa and Sierra are aware of Mr. Arcuri's conviction and wholeheartedly support him. *See* Exh. D & E.

Lisa Arcuri described her husband to Probation as a "good person" who is always looking out for everyone else, and he is "simply the best." She was in shock when she learned of her husband's arrest, especially since any form of criminal conduct is "out of character" for the Defendant; she also believes the instant matter is "embarrassing" for their family but expressed a belief that Defendant has done his best to correct the situation. Mrs. Arcuri opined that the Defendant has been the best loving husband and has been the best father to their daughter. Mrs. Arcuri is hopeful that Your Honor will acknowledge that the Defendant is a "good man" who made a mistake and impose a lenient sentence. *See* PSR at ¶34. In light of Lisa Arcuri's recent retirement and reduced income, a sentence with a period of incarceration where my client would not be able to contribute financially to the household would be particularly difficult.

### B. Mr. Arcuri's Acceptance of Responsibility

Nichlas Arcuri was arrested and pled guilty on August 5, 2024, and he paid back the entire amount of the Tax Loss -- $635,498.66 – on August 9, 2024. *See* PSR Addendum at p.1. *See also* payment receipt attached hereto as **Exhibit F**. In addition, attached hereto as **Exhibit G** is a letter from Mr. Arcuri's new CPA, John M. Shall indicating that Mr. Arcuri has had his corporate tax returns amended for a six-year period as well as the personal tax returns for all of the members of his family who were owners of the corporations at issue. Mr. Shall was advised by the case agent not to amend Mr. Arcuri's own returns as the agents were determining Mr. Arcuri's tax, penalty and interest liability. *See id.*

In the Government's Submission, they assert that Mr. Arcuri was "not initially forthcoming when the Special Agent first approached him in March of 2022." *See* Government's Submission at fn. 2. In reality, Mr. Arcuri was forthcoming – he just asked for an attorney. The Government then conceded "the defendant, over two subsequent interviews, admitted misconduct and provided incriminating records, including the cash payroll ledger. Through his attorney, the defendant cooperated fully in the investigation, and indicated his intention to enter into a plea agreement." *Id.* I am confident that the IRS case agent would say that Mr. Arcuri was one of the most cooperative defendants he has ever encountered. My client not only provided the cash payroll ledger that was a road map to his criminal behavior, he spoke with the agent and answered whatever questions the agent had. In other words, he fell on the proverbial sword from our first meeting with the agent.

Mr. Arcuri completely admitted to his involvement in the offense to Probation. He noted that when his father retired and when he took over the operations in 2015, the business employed several individuals who did not have legal status in the United States. Those employees were initially hired by his father many years ago, and their wages were paid in cash. The Defendant initially attempted to begin paying these employees via check. *See* PSR at ¶11. Mr. Arcuri was advised by his then-accountant (who was replaced by John Shall, CPA) that he could not pay his immigrant workforce by check and that he had to pay them by cash. Mr. Arcuri feared that his long-time, well-compensated employees would quit if they did not receive their pay in cash. *See* PSR Addendum at pp.1-2. In 2022, after he was first approached by the IRS case agent, Mr. Arcuri hired an immigration attorney to assist his loyal workers in obtaining legal status in the United States and has commenced paying their wages via check to ensure proper taxes are being collected. *See* PSR Addendum at p.2.

## C. No Criminal Past

Nicholas Arcuri has no prior criminal convictions.

## III. OFFENSE LEVEL COMPUTATION

The PSR, the Government and the plea agreement both calculate the offense level at 20 and the total offense level at 15.

### A.   Guidelines Calculation

Mr. Arcuri, the Government, the Plea Agreement at ¶ 2, and U.S. Probation (PSR at ¶¶ 12-22) all agree that the following Guidelines calculation applies:

| | |
|---|---|
| Base Level Offense (USSG §§ 2T1.6(a), 2T4.1(H)) | 20 |
| Adjustment for Certain Zero Point Offenders (USSG. § 4C1.1) | -2 |
| Acceptance of Responsibility (USSG. § 3E1.1(a)) | -2 |
| Acceptance of Responsibility (USSG. § 3E1.1(b)) | -1 |
| **Total:** | **15** |

The total offense level of 15 corresponds to a Guidelines range of 18 to 24 months' incarceration. The government has agreed to request and did request a sentence at the low end of the Guidelines range (18 months' incarceration) as determined by the Court. *See* Plea Agreement ¶ 5(b); *see also* Government's Submission at pp.8, 13.

## IV. PURPOSES OF SENTENCING (18 U.S.C. § 3553(a)(2)(A)-(D))

The Court's analysis under Section 3553(a)(2) must be guided by the mandate to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of punishment] set forth" in Section 3553(a)(2). 18 U.S.C. *§* 3553(a). They include the need for the sentence:

(A) to reflect the seriousness of the offense, to promote respect for the law,

and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

In determining an appropriate sentence for Mr. Arcuri, Your Honor should take into account the factors described above, as well as those set forth below.

5

## V. SENTENCING

The calculated Guideline range for a Level 15 offense is 18 to 24 months. Probation viewed Mr. Arcuri's "proactiveness as significant, specifically with regard to his full payment of restitution prior to sentencing. Additionally, the defendant was immediately cooperative with authorities when he was first approached regarding his involvement in the instant offense, and he pled guilty on the day of his surrender. In addition, the instant offense was non-violent in nature and he is a first-time offender. The probation department has carefully considered these factors in determining an appropriate sentence, as well as the sentences imposed on others in this district who have committed similar offenses. Therefore, the recommended sentence, (3 years of probation) appears appropriate in this case and also affords adequate punishment and deterrence. The recommended sentence also complies with the requirements of 18 U.S.C. § 3553(a) and sufficiently avoids unwarranted sentencing disparities." Probation also recommended a fine of $25,000. *See* U.S. Probation Department Sentence Recommendation at pp. 2-3. Mr. Arcuri concurs and asks Your Honor to impose the sentence recommended by Probation.

### A.    Nicholas Arcuri Should Receive a Non-Custodial Sentence.

The Sentencing Guidelines are advisory and are merely one factor to consider in determining an appropriate sentence. *See Gall v. United States*, 552 U.S. 38 (2007); *Nelson v. United States*, 555 U.S. 350, 352 ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.").

As the Guidelines recognize, "[t]here may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense." U.S.S.G. § 2B1.1, Application Note 21(C). *See generally United States v. Parris*, 573 F. Supp. 2d 744, 745 (E.D.N.Y. 2008). The "Sentencing Guidelines for white collar crimes should [not] be a black stain on common sense." *Id.* at 754. The Court must also consider each of the Section 3553(a) factors. The "weight to be afforded" each factor is "a matter firmly committed to the discretion of the sentencing judge." *United States v. Jennings*, 743 F. App'x 474, 478 (2d Cir. 2018).

In doing so, the Court – taking into account all of the mitigating circumstances in this case – should arrive at a sentence that is "sufficient, but not greater than necessary, to comply with the purposes of" sentencing. *See* 18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 50 n.6. There is no requirement that there be "'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Id.* at 47.

Because Mr. Arcuri's total offense level is in Zone D, the Guidelines do not provide for an option of probation. However, "the Guidelines disallowance of the option of probation is, of course merely advisory." *See United States v. Kononchuk*, 485 F.3d 199, 205 (3d Cir. 2007). "[T]hus the range of choice dictated by the facts of the case is significantly broadened" from the Guidelines, and federal courts have the power to order non-custodial sentences. *See Gall*, 552 U.S. at 59-60 (reversing appellate court reversal of sentence of probation where Guidelines would have precluded noncustodial sentence). Analysis of these factors shows that a non-custodial sentence would be appropriate.

As my client's decades-long friend, Dr. John Piazza pointed out in his letter of support to Your Honor, "He is a pillar of support for those who depend on him, not only his family but also his employees who look to him for financial and emotional stability." *See* **Exhibit H**. His twin brother, Gianni Arcuri wrote in his letter to Your Honor, "Nicholas is key in the day-to-day operations of our company. As we all have our individual roles, his is the constant communication with our top designers and decorators. He is vital to the continued success of the company. In all honesty, I fear without him our company will not survive." *See* Exh. B.

My client is responsible for opening the warehouse, payroll, all ordering of supplies, payments of all bills such as gas, electric, phone, insurance, taxes, etc., scheduling all deliveries and even making deliveries, dealing with the customers, procuring customers, customer service, scheduling all employees, drafting work orders, sketching out the job designs and closing the warehouse. His brothers are involved in the production side of the business. No one else is capable of performing his tasks. Incarcerating my client will put the business, which was opened by his now-deceased father in 1972, at risk and would possibly cause all of his employees to lose their jobs, including his immigrant workers.

Included in those workers who could lose their jobs is Leonardo M. Valerio, who also wrote a letter of support to Your Honor. He has been working for the company since September of 1993. Mr. Valerio wrote that my client, "treats everyone around him with respect and generosity. He took me under his wing and helped me with everything I needed, including learning English…. Today I am living the American dream, and I truly believe it would not have been possible without his support." *See* **Exhibit I.**

Attached hereto are additional letters of support from Jessica Maggi Arcuri (**Exhibit J**), Dawn Marie Hanley (**Exhibit K**), Caroline Mezzetta (**Exhibit L**) and Armondo Aguirre (**Exhibit M**).

**1.    Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

A review of the attached letters of support shows that Nicholas Arcuri is, by all accounts, a good, kind person who was always there to support his friends and family. Mr. Arcuri is family man who devotes himself to helping and providing stability whenever needed. He is often described as a devoted husband and father. To be sure, he does not deny that he committed a serious criminal offense, for which he promptly and fully accepted responsibility and understands that he deserves punishment. But, as the letters show, the offense is aberrational and was completely out of character – which has since been rectified with the payment in full of the Tax Loss.

While Nicholas Arcuri accepts full responsibility and just punishment, a prison term would not be necessary to punish him. He has paid the Tax Loss in full and has taken the steps to ensure the necessary corporate taxes are paid as well as the personal taxes of the other owners of the corporations. *See* Exh. F (payment receipt) and Exh. G (Letter from Mr. Arcuri's new CPA).

This is not a crime that was solely motivated by self-enrichment. *Cf. United States v. Parris*, 573 F. Supp. 2d at 754 ("fairness in sentencing required that [the Court] recognize that, although the [defendants'] criminal conduct was reprehensible, they were simply not in the same league as" other frauds warranting severe sentences). The business employed several individuals who did not have legal status in the United States. Those employees were initially hired by Mr. Arcuri's father many years ago, and their wages were paid in cash. *See* PSR at ¶11. Some were paid as much as $1,500 a week in cash. *See* Government's Submission at p. 5. The Defendant initially attempted to begin paying these employees via check. *See* PSR at ¶11. Mr. Arcuri was advised by his then-accountant that he could not pay his immigrant workforce by check and that he had to pay them by cash. Mr. Arcuri feared that his long-time, well-compensated employees would quit if they did not receive their pay in cash. *See* PSR Addendum at pp.1-2. In 2022, after he was first approached by the IRS case agent, Mr. Arcuri hired an immigration attorney to assist his loyal workers in obtaining legal status in the United States and has commenced paying their wages via check to ensure proper taxes are being collected. *See* PSR Addendum at p.2.

My client agreed to accept full responsibility for his brothers and his parents. One point that may not be clear in the PSR is that his parents lent $300,000 to the business last summer from a recent inheritance so that Mr. Arcuri could pay the full Tax Loss at once. All three brothers are responsible to pay the loan back.

**2.    Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Adequately Deter Criminal Conduct**

A variance from the Sentencing Guidelines in this case in no way undercuts deterring future criminal conduct. *See United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) (affirming a 20-month sentence despite a Guidelines range of 78 to 97 months where "need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment on the defendant"). While it may not seem like a lot to the Government, being a felon for the rest of your life is a devastating punishment to someone who has never interacted with the criminal justice system in over 50 years.

As recognized by the United States Supreme Court in *Gall*, while custodial sentences are clearly more severe, "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty," including regularly reporting to a probation officer, unannounced visits to the home, mandatory disclosure of financial information, etc. *Gall*, 552 U.S. at 48-49.

My client began asking how to make the restitution payment once the Tax Loss was calculated back in 2023, but ran into bureaucratic red tape. Mr. Arcuri made his monetary restitution by paying back the Tax Loss in full -- just four days after he pled guilty and the day after Your Honor granted the joint motion.

**3.    Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

The PSR is clear that Nicholas has not acted dangerously or with malice or in disregard of others. He poses no danger to the public and has no criminal history whatsoever. The letters of support make it clear that he has strong family ties.   He is extremely unlikely to ever commit another crime. *See United States v. Oldani*, No. 09-CR00010, 2009 WL 1770116, at *7 (S.D.W. Va. June 16, 2009) ("Based on his status as a true first offender, there is little likelihood that [the defendant] will be brought before the criminal justice system in the future.").

Given Mr. Arcuri's non-criminal past and acceptance of responsibility, a sentence of 3 years of probation will effectively deter Mr. Arcuri from engaging in further illegal conduct for the rest of his life. Mr. Arcuri is a non-violent, 52 year-old man who has never even been arrested in the past.   He will undoubtedly learn his lesson from a sentence of probation. According to the Sentencing Commission, "empirical evidence shows that criminal history as a risk measurement tool has statistically significant

power in distinguishing between recidivists and non-recidivists" and that "offenders with minimal prior criminal history ... [n]ot only ... have substantially lower recidivism rates, but ... are considered less culpable under the guidelines." United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 15 (May 2004), *available* at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2004/200405Recidivism_Criminal History.pdf.

The Sentencing Commission also notes that "sentencing reductions for 'first offenders' are supported by the recidivism data and would recognize their lower re-offending rates." *Id.*

### 4.    Available Sentences

Nicholas Arcuri is eligible for probation by statute because he did not commit a Class A or Class B felony. 18 U.S.C. §§ 3559(a), 3561(a).  The Sentencing Guidelines do not provide for a possibility of probation, however, they are advisory.  Therefore, the guidelines do not prevent the Court from imposing the sentence it considers most appropriate, including a noncustodial sentence. *Gall,* 552 U.S. at 59-60.

Accordingly, a sentence of probation would properly reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to future criminal conduct, and protect the public.  Sentencing Mr. Arcuri to probation would not create a risk to public safety.

### 5.    Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct

A sentence of probation is line with other comparable cases in this District.  In support of its position that an 18-month sentence is appropriate, The Government cites a New Hampshire case with a sentence of 18 months and an Eastern District case with a sentence of 20 months.  *See* Government's Submission at pp. 11-12.

US Probation, which is vastly more familiar with sentences in the Eastern District, "has carefully considered these factors in determining an appropriate sentence, as well as the sentences imposed on others in this district who have committed similar offenses.  Therefore, the recommended sentence, (3 years of probation) appears appropriate in this case and also affords adequate punishment and deterrence." *See* U.S. Probation Department Sentence Recommendation at pp. 2-3.

The case of *United States v. Riccio*, 20-CR-522 (E.D.N.Y.) is similar to this case. It involved a plea to one count of 26 U.S.C. § 7202 with unpaid restitution of $255,433.00 and a Sentencing Guidelines offense level calculation of 15. In 2022, Judge Nicholas G. Garaufis sentenced the defendant to 4 years of probation, $100 special assessment and Restitution.

The case of *United States v. Zhang*, 21-CR-309 (E.D.N.Y.) is also similar to this case, but involves a different tax statute -- 26 U.S.C. § 7206 (Aiding and Assisting the Preparation of a False Tax Return) with unpaid restitution of $257,444.00 and a Sentencing Guidelines offense level calculation of **17**. In 2023, Judge Ann M. Donnelly sentenced the defendant to **time served**, one year supervised release, $100 special assessment, $20,000.00 fine, and Restitution

The case of *United States v. Zheng*, 19-CR-262 (E.D.N.Y.) is also similar to this case. It involved a plea to one count of 26 U.S.C. § 7202 with unpaid restitution of $688,234.00. In 2022, Judge Nicholas G. Garaufis sentenced the defendant to 4 years of probation, $100 special assessment and Restitution.

The case of *United States v. Chon*, 22-CR-259 (E.D.N.Y.) is also similar to this case. It involved a plea to one count of 26 U.S.C. § 7202 with unpaid restitution of $199,238. In 2024, Judge LaShann DeArcy Hall sentenced the defendant to 2 years of probation, $25,000.00 fine, $100 special assessment and Restitution.

In light of the unique circumstances here, especially considering Mr. Arcuri has already paid his restitution in full and has taken the steps to rectify his corporate taxes to ensure the same mistake is not made, a sentence of probation is in keeping with other cases. *See* Exh. G, *see also United States v. Kelley*, No. 16-CR-00837 (S.D.N.Y. 2017) (imposing probation instead of a Guidelines sentence of 97 to 121 months); *United States v. Schuster*, No. 01-CR-67, 2002 WL 31098493, at *1 (S.D.N.Y. 2002) (sentence of probation); *United States v. Schulman*, No. 16-CR-442 (E.D.N.Y. 2017) (reducing a sentence for insider trading from a Guidelines range of 41 to 51 months to probation); *United States v. Shamilzadeh*, No. 04-CR-1094 (E.D.N.Y. 2008) (imposing probation where the defendant pled guilty to conspiracy to defraud financial institutions of over $146 million); *United States v. Warner*, No. 13-CR-731 (N.D. Ill. 2014), aff'd, 792 F.3d 847 (7th Cir. 2015) (imposing probation where the defendant had already suffered "humiliation and reproachment," and "society will be best served by allowing him to continue his good works"). *United States v. Howe*, 543 F.3d 128 (3d Cir. 2008) is particularly illustrative. There, the Third

Circuit affirmed probation and home confinement for wire fraud where offense was "isolated mistake" in an otherwise upstanding life. The letters of support make it clear, Mr. Arcuri made an isolated mistake here.

6. **Need to Provide Just Restitution**

"[T]he need to provide restitution to any victims of the offense" is a factor that must be considered by the Court in imposing a sentence. 18 U.S.C. § 3553(a)(7). Long before he was arrested, Mr. Arcuri began paying his employees by check, making the necessary tax payments and began asking how to make the restitution payment once the Tax Loss was calculated back in 2023, but ran into bureaucratic red tape. Mr. Arcuri made his monetary restitution by paying back the Tax Loss in full -- just four days after he pled guilty and the day after Your Honor granted the joint motion. A noncustodial sentence would be the best option in these circumstances for himself and his family business – especially in light of his wife's recent retirement and reduction in income as well as the possibility that the business would fail during a period of his incarceration.

## VI. CONCLUSION

We respectfully submit that, upon consideration of all of the Section 3553(a) factors, a noncustodial sentence of 3 years of probation is the most just sentence in this case. It is sufficient, and not greater than necessary, to meet the purposes of sentencing.

Respectfully submitted,

Robert E. Brown, Esq.
ROBERT E. BROWN, P.C.
*Attorney for Nicholas Arcuri*
14 Wall Street, 20th Floor
New York, New York 10005
Telephone: (212) 766-9779
Cell: (646) 637-4790

cc:   Jeffrey McLellan, Esq. DOJ Trial Attorney via email
U.S. Probation Officer Jennifer E. Baumann via email and US Mail

# EXHIBIT A

December 20, 2024
Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: USA v. Nicholas Arcuri
Case No: 24-CR-00225 (DLI)

Dear Judge Irizarry:

I know you have received many letters from parents asking for leniency for their son or daughter. It is only natural. I have been thinking and thinking about how to explain to you the character of our son Nicky. He has always gone above and beyond to show his love and devotion to us. His respect for us is perfect but it all comes from love.

Without malice or causing danger to anyone else my son did the wrong thing. He has been led by bad advice. Of course, being a judge, you know better than most people that sometimes-good people make mistakes.

I believe that only an honorable and decent person learns from his mistakes and tries his best to face them and make amends to pay back the wrong he has done. I have read the letters that my granddaughter Sierra and my daughter-in-law have written to you. They have given you about my son's character. They are right. He is our everything! He is a remarkable and wonderful son! He has always helped us through the most difficult times. As his father is now facing another return of oral cancer and the next weeks and months will be very very painful and difficult, we are asking for understanding and leniency in our son Nicky's sentencing. Nicky knows his business procedures were wrong, and he has taken the right action to correct and educate himself going forward. These mistakes will not happen again. We respectfully ask you to help us as a family that has recognized the wrong that has been done to rise up and see a new and better future arise.

Sincerely and truly yours,

Linda and Salvatore Arcuri

January 8, 2025

Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201


Dear Judge Irizarry,

I am writing this letter as a mother who loves her son dearly. My son, Nicholas, has always been a wonderful and devoted son and brother, who has always been the glue that holds our family together through the most difficult times. Nicholas' father has succumbed to his battle with cancer and passed away on December 29th. With my husband's recent passing, Nicholas's presence and support are more critical than ever, not just for me but for everyone who depends on him. He is a source of strength and stability for me and my entire grieving family. Judge Irizarry, I humbly ask for your leniency and compassion as you determine Nicky's sentence. Losing him to incarceration at this moment would be devastating for our family. We are already grappling with the pain of my husband's death, and the thought of losing Nicholas, our anchor, is almost unbearable.

I understand that Nicky is facing the consequences of a mistake he deeply regrets. He has reflected on his poor decisions and has continually expressed to me and our family the immense remorse and shame he feels for his actions. Nicky is a good person who did the wrong thing. He has seriously taken responsibility to educate himself and change for the better. I believe in my heart that he can continue to contribute positively to society, to his business, and, most importantly, to our family if given a second chance. I beg you to consider a sentence that allows him to remain with his family or serve in a way that does not take him away from us entirely.

Thank you for your time and for considering this heartfelt request.

Linda Arcuri

Linda Arcuri

# EXHIBIT B

December 18th 2024

Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE:      USA v. *Nicholas Arcuri*
Case No: 24-CR-00225 (DLI)

Dear Judge Irizarry,

My name is Gianni Arcuri, Nicholas Arcuri's twin brother. To
say twins have a special bond is probably the most accurate
statement one can make. We have done everything together
from the moment we were born. He is my best friend, the best
brother and best human being I know. I want to take this time to
give you a better understanding of the man you know as Case
No: 24-CR-00225 but I know as my beautiful brother.
Nicholas is such an important part of my life. Although he is
only three minutes older than me, I find myself always looking
to him for advice. From little boys to grown men, he's always
been there for me. He was there for my biggest
accomplishments to some of my more trying defeats. Nicholas
shines the most when he's helping others, it is a sight to see and
a part of him that I respect so much.
As a brother, he will never let you down. As a father, his
dedication to his daughter has been exemplary. As a husband
he's shown true devotion. As a son no one can ask for better.
 What life has given me is something I will never take for
granted- my brother Nicky.
Nicholas is key in the day-to-day operations at our company. As
we all have our individual roles, his is the constant
communications with our top designers and decorators. He is
vital to the continued success of the company. In all honesty, I
fear without him our company will not survive.
As a brother who loves him very much, I would like to ask if
you could please show leniency in Nicky's sentencing.
 Although I understand the gravity of this case, I believe in my
heart this does not define who Nicky is. This has been a
nightmare that we wish never occurred. It has taken such a toll
on my brother, I know he's very remorseful. Thank you for
taking the time to read my letter and for your consideration in
leniency for my brother.

Best regards,
Gianni Arcuri

# EXHIBIT C

# Honorable Dora Lizette Irizarry

**Eastern District of New York**
**225 Cadman Plaza East**
**Brooklyn, New York 11201**

**Re:  USA v. Nicholas Arcuri**
    **Case No: 24-CR-00225 (DLI)**

Dear Judge Irizarry,

My name is Steven Arcuri and I am writing this letter to provide a heartfelt character reference for my older brother, Nicholas Arcuri. As his younger brother, I have had the privilege of witnessing his character, values, and integrity firsthand over the years and I can confidently say that he is one of the most reliable and honorable individuals I know.

Growing up, Nicky has always been a constant source of guidance and support for me. He has been a mentor, a role model, and a source of unwavering encouragement. Nicky has always demonstrated remarkable patience, understanding, and wisdom.

One of the qualities I admire most about my brother is his strong sense of responsibility. Nickys work ethic, dependability, and willingness to go above and beyond for those he cares about are traits that inspire me to be a better person every day.

Nicky's empathy and kindness make him someone people naturally gravitate toward and trust. Nicky is a great communicator and someone who approaches every situation with a level-headed and fair perspective. These traits make him not only a great brother but also an exceptional friend and colleague. He is a person of integrity, compassion, and strength, and I am incredibly proud to call him my brother.

I'd like to thank you for taking your time to read my families letters and my own regarding Nicholas and how we all love and need him in our life everyday. Nicholas Arcuri is an honest, credible, and remarkable individual.

Sincerely,
Steven Arcuri
*Steven Arcuri*

# EXHIBIT D

December 15, 2024
Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: USA v. Nicholas Arcuri
Case No: 24-CR-00225 (DLI)

Dear Judge Irizarry:

I am writing to you with great sadness in my heart to ask for your compassion and leniency regarding my husband, Nicholas Arcuri. I fully acknowledge that he has made serious mistakes and deeply regrets his actions. He is truly remorseful for his failure to follow the law, and I can assure you that he has done everything within his power to repair the situation.

I want to share with you the man I know and love-the man who has been a source of unwavering support to his family, friends and community and a man who is selfless, kind and compassionate. He is someone who gives to strangers and steps up in dangerous situations, one time putting out a fire in the mall and another helping the police run and catch someone. He is constantly the first to help or lend a hand when anyone is in need. Whether it is something big like helping someone move or something small like driving to and from the airport, or shoveling out elderly neighbors, Nicky enjoys making the load a little lighter.

Although he has two brothers, he is the one that his parents rely on to take to Sloan for his father's treatments and doctor's appointments. My father-in-law has serious health issues and quite a schedule to manage. His parents are overwhelmed by it and Nicky has a calm and caring way about him and also the patience of a saint. He is also a wonderful husband and father and the sadness and anxiety my daughter and I have for the prospect that he will go away has been so difficult. Believe me, our family has been going through an incredibly difficult time and the emotional toll that this situation has taken on Nicky has been agonizing. We have spent the last three years living with the weight of his mistakes. My husband's remorse is genuine. The prospect of losing time with his family has been devastating. He understands the gravity of his actions, and there is not a day that goes by that he doesn't. He wishes he could undo his actions and move forward rebuilding his life.

I respectfully ask for your understanding and mercy in considering his case. Please consider the full character of the man he is and allow him to continue to be in the lives of those who depend on him. He is not a criminal at heart. He has learned a hard lesson and is committed to ensuring that this will never happen again.

Thank you for your time and consideration.

Sincerely,

Lisa Arcuri

# EXHIBIT E

December 15, 2024

Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE:     USA v. *Nicholas Arcuri*
        Case No: 24-CR-00225 (DLI)

Dear Judge Irizarry,

I'm writing this letter as a daughter who deeply loves and admires her father. My dad, Nicky, is one of the kindest, most selfless people I've ever known, and the thought of him not being around to lean on is unimaginable. Throughout my entire life, anyone who has ever spoken to me about my dad has always said the same thing: "Do you know how lucky you are to have the father you have?" If you ask anybody about Nicky Arcuri, 10 out of 10 times they will mention his kindness and his willingness to help anyone in need, no matter who they are. He has so many qualities I've aspired towards my whole life; he's not only my role model but also the person I trust most in the world. I can't envision my life or my family's life without him by our side.

My dad has never sought any reward or recognition for his actions. He's the kind of person who runs toward a problem when other people run away, simply because he knows it's the right thing to do. I'll never forget the time when a fire broke out in the mall; other people were looking the other way when they saw the flames thinking it wasn't their responsibility. But the moment my dad noticed, without hesitation, he jumped into action and single handedly put out the fire like it was his job. Strangers and employees approached him after saying thank you for his bravery and for being the only one to look out for them when no one else was willing. That's who my dad is – someone who always puts others before himself.

It's not just these moments that define my dad's character but also the millions of small acts of kindness I've admired over the years. He's the person who shows up and steps in when other people need help. I've seen him over and over again spring into action to help cops or firefighters or health care workers in accidents or emergencies. I've watched him help our neighbors in floods and storms, carry groceries or move furniture for people struggling without them even asking him… these are the moments that have shaped the kind of person I want to be. For my dad, this kindness isn't a choice; it's just who he is.

In our family, my father is our protector – for all of us. He's the reason my mother and I have always felt safe, and right now he is the anchor for my grandparents especially. My grandfather has been battling cancer for almost ten years, and through all the surgeries, radiation, and chemo, this nightmare has only been bearable because of my dad. He's been there to drive my grandpa to doctor's appointments and give him the emotional strength that's kept him fighting. My grandmother relies on my father every single day; he's her strongest support system through this disaster. I really don't know how my grandparents could manage without my dad.

As his daughter, I learn from him every day of my life. My dad has always taught me to do the right thing, care for others, and take responsibility for my actions. He leads by example, which is why I know how deeply he regrets the mistakes he's made. I've seen the remorse in his eyes and heard it in his voice. He's never justified his actions or made excuses. He's been honest with me about what he's done wrong and shown me what accountability looks like – owning his mistakes, understanding their gravity, and committing to making things right. My father has taught me that no one is perfect, but a good person always strives to learn and do better.

I understand the seriousness of this situation and I don't take it lightly in the slightest. But I also know that my father is a good person, and the thought of him not being with us is devastating because he's the heart of our family. My mother needs him, my grandparents need him, and I need him. He has so much more to teach me. I respectfully ask for understanding and leniency in my father's case. My dad isn't just a man who made a mistake; he's someone who has good character and spent his entire life going out of his way to help everyone he does and doesn't know. I believe with all my heart that he'll use this experience to continue being the incredible person he is and to make amends for the choices he deeply regrets.

With all my respect and hope,

Sierra Arcuri

# EXHIBIT F

Generated: Aug 9, 2024 12:01PM

Page 1/1

# U.S. District Court

## New York Eastern - Brooklyn

Receipt Date: Aug 9, 2024 12:01PM

Nicholas Arcuri

Rcpt. No: 100016115     Trans. Date: Aug 9, 2024 12:01PM     Cashier ID: #JH

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|---------------------|-----|-------|-----|
| 700 | Criminal Debt | DNYE124CR000225 /1 Nicholas Arcuri | 1 | 148745.00 | 148745.00 |
| 700 | Criminal Debt | DNYE124CR000225 /1 Nicholas Arcuri | 1 | 486753.00 | 486753.00 |

| CD | Tender | | | Amt |
|----|--------|--|--|-----|
| CH | Check | #105 | 08/9/2024 | $148,745.00 |
| CH | Check | #1634 | 08/9/2024 | $486,753.00 |
| | | | Total Due Prior to Payment: | $635,498.00 |
| | | | Total Tendered: | $635,498.00 |
| | | | Total Cash Received: | $0.00 |
| | | | Cash Change Amount: | $0.00 |

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

# EXHIBIT G



DeSantis
Kiefer
Shall &
Sarcone
LLP

Certified Public Accountants

*Navigating the Road*
*to*
*Financial Security*

January 7, 2025

*Via E-mail:*
rbrown@robertbrownlaw.com

Mr. Robert E. Brown, Esq.
1200 South Amboy, Suite 201
Staten Island, NY 10314

### Capri Upholstery Custom Furnishings LLC

Dear Mr. Brown:

At the request of Mr. Nicholas Arcuri, I will summarize the nature of the services I have provided to the Arcuri Family and Capri Upholstery.

Initially, I was provided with a summary of customer checks cashed at a check cashing facility, this list was provided by the Department of the Treasury with a separate list provided by Mr. Nicholas Arcuri. I proceeded to match up the two schedules to ensure that the amounts reported by the IRS were reasonable relative to Mr. Arcuri's schedules.

Based on the conversations with the Department of the Treasury, I amended the corporate returns of Capri Upholstery for a six-year period, as well as the personal returns of the Arcuri members who allegedly received a benefit from these cashed checks. The only exception for preparing returns was the returns of Mr. Nicholas Arcuri. I was advised by the agent in charge of this case that they were determining the tax, penalty and interest liability of Mr. Nicholas Arcuri.

I then worked with the family to determine how funds would be raised to satisfy the obligation due the Department of the Treasury.

Please let me know if more specific information is needed.

Very truly yours,

**DeSantis, Kiefer,**
**Shall & Sarcone, LLP**

John M. Shall, CPA
(Sender's Email: jshall@dkscpa.com)

JMS/fl

# EXHIBIT H



December 23, 2024

Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: USA v. Nicholas Arcuri
Case No. 24-CR-00225 (DLI)

Dear Judge Irizarry:

My name is Dr. John Piazza, and I am writing on behalf of my close friend Nicholas Arcuri, whom I have had the privilege of calling a brother for over three decades. Over the course of our friendship, I have come to know Nick's character, values, and priorities deeply. When you have been friends with someone for as long as I have with Nick, you see the true essence of who they are—what drives them, what they hold dear, and the lengths to which they will go to protect what matters most. For Nick, that has always been and will always be his family.

I have witnessed Nick's unrelenting devotion to his loved ones. He has consistently put their needs above his own, even during the most difficult times. When his father was battling cancer, I saw the toll it took on Nick, not just emotionally but in every aspect of his life. He was desperate to protect his family and ensure they had the resources and care they needed during such a painful and uncertain time. I believe that this desperation, coupled with his deep love and sense of duty, led to a lapse in judgment.

While I am not here to condone his actions, I can unequivocally vouch for the kind of person Nick is at his core. He is loyal, caring, and trustworthy—a friend who has stood by me and countless others through life's challenges. He is also a pillar of support for those who depend on him, not only his family but also his employees, who look to him for financial and emotional stability.

I ask for leniency for Nick because I know the weight he carries and the integrity he demonstrates in every other aspect of his life. None of us can say how we would respond in moments of intense pressure and heartbreak, but I ask that you consider Nick's actions through the lens of a man trying to do everything he could for his family.

Thank you for taking the time to read this letter and consider my perspective. I hope it sheds light on the person Nick truly is and helps you see beyond the circumstances to the heart of the man behind them.

Respectfully,

Dr. John Piazza

1163 FOREST AVENUE, STATEN ISLAND, NY 10310
P 718.727.0055 | F 718.727.3020
WWW.NYCHIROPT.COM



# EXHIBIT I

December 19, 2024

Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn NY 11201

RE:   USA v. Nicholas Arcurri
      Case No: 24-CR-00225 (DLI)

Dear Judge Irizarry,

My name is Leonardo Valerio, and I am writing on behalf of Nicolas Arcuri, whom I had the pleasure of meeting in 1993 when he was a teenager. Over the years, Nicolas has grown into a well-respected coworker and friend. I have known him for 31 years, and our friendship has extended beyond the workplace.

I first met Nicky in September 1993 when I passed by his father's store and saw a sign that read "Help Wanted." Since that day, I have witnessed how he treats everyone around him with respect and generosity. He took me under his wing and helped me with everything I needed, including learning English. I have been working for him and his family for the past 31 years, and I can honestly say that this has been one of the best decisions I have ever made. Today, I am living the American dream, and I truly believe it wouldn't have been possible without his support. Nicky has always been there for me and my family. About 10 years ago, when his father was first diagnosed with cancer, I saw how he took charge of the situation, ensuring that the family remained strong as he took over the business. All my coworkers and I love him because he treats us with the utmost respect and is always there for us, just as he is for everyone he encounters.

Throughout our time together, Nicolas has consistently demonstrated honesty and trustworthiness. He goes above and beyond what is expected of him and always shows respect to everyone, getting along well with his colleagues. He has become my family; we have attended each other's weddings. I have always known Nicolas to be a remarkable individual—generous, kind, and open-hearted. Anyone who comes into contact with him leaves feeling a little better about themselves. I understand that he is currently facing severe charges and must face the consequences of his actions. However, knowing him as I do, I respectfully request leniency. I am 100% sure of how regretful and remorseful he is now.

Thank you so much for your time and attention.

Sincerely,

Leonardo M. Valerio
88 16th Street Apt 12
Brooklyn NY, 11215
Cell 347-203-6232

# EXHIBIT J

Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: USA v. Nicholas Arcuri
     Case No: 24-CR-00225 (DLI)

Dear Judge Irizarry,

I hope this letter finds you well. I am writing you today to provide a character reference for my brother-in-law, Nicholas Arcuri. I have had the pleasure of knowing Nicky for 16 years, during which time I have been lucky enough to witness his unwavering commitment to our family and his community.

Nicky is a devoted family man and a loving husband and father. Nicky's commitment to their well-being is evident in the love he exudes in their lives.

Nicky is my husband's protective oldest brother, my son's adored uncle and someone I deeply love and respect. Nicky is the protector of our family, he is the one we all lean on most. Nicky's willingness to support any one of us at any given moment, speaks volumes about his character and the values he upholds.

In 2014, Nicky gave a best man speech at my wedding; he had the entire room laughing in one instant and crying the next. Nicky spoke so beautifully about his baby brother whom he loves and adores and it made me so proud to be a part of this family.

I hold Nicky in the highest regard and believe he exemplifies the qualities of integrity, dedication, and kindness.

I understand the seriousness of the matter before the court and do not intend to diminish its gravity. However, I believe it is important to consider the entirety of Nicky's character.

Thank you for considering my perspective and I wish you all the best in the new year.

Sincerely,

Jessica Maggi Arcuri

# EXHIBIT K

December 16, 2024

Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE:     USA v. *Nicholas Arcuri*

        Case No: 24-CR-00225 (DLI)

Dear Judge Irizarry:

I hope this letter finds you well, I am writing to you to provide a character reference and respectfully request leniency for Nicholas Arcuri, who is scheduled to appear before you in relation to Case No: 24-CR-00225. I have had the honor of knowing Nicky for well over 30 years, and in that time, I have had the privilege of witnessing the positive impact he has had on the lives of those around him, including myself.

Nicky and I first met through his then girlfriend, now wife Lisa who was a close childhood friend, and since then, our friendship has grown stronger each year. He has consistently demonstrated qualities such as kindness, integrity, compassion and dedication to helping others. I have seen Nicky go out of his way to support friends, family, and even strangers in need, without seeking any recognition or reward.

In addition to being a loyal friend, Nicky is a devoted husband and father to my Goddaughter Sierra. He has always been committed to his responsibilities and has consistently demonstrated a strong work ethic and a genuine concern for the well-being of others. These qualities are evident in the way he interacts with everyone around him.

I understand that Nicky is facing serious charges, and I do not wish to minimize the gravity of the situation. I have also witnessed his genuine remorse and accountability for what brings him before this court. However, I am humbly requesting that you consider his long history of good character and the many positive contributions he has made to his community. I truly believe that this incident is an aberration in Nicky's life and does not reflect his true nature.

I respectfully ask for leniency in Nicky's sentencing, with the hope that he will have the opportunity to continue to be a positive force within his family and his community. I am confident that with the right support and guidance, Nicky will be able to learn from this experience and continue to make amends for his actions while regaining his upstanding name within his community and will diligently work to rebuild his life.

Thank you for taking the time to read my letter and consider my request. I have the utmost respect for the legal process and the often-difficult decisions you must make.

Sincerely,

Dawn Marie Hanley
2048 East 22 Street
Brooklyn, NY 11229
Dawnmarie713@gmail.com

# EXHIBIT L

December 18th 2024

Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE:      USA v. *Nicholas Arcuri*
Case No: 24-CR-00225 (DLI)

Dear Judge Irizarry,

Thank you for taking the time to read this letter. My name is Caroline Mezzetta and I am Nicholas Arcuri's sister-in-law. I've had the privilege of knowing Nicholas for over twenty-four years. The first time I met Nicholas was on his wedding day, a groom as happy as can be marrying his true love. I observed something that day that has proven itself true every day since- his love and dedication to his family is undoubtable.

To say Nicholas is a good man, would be an understatement. I've watched him as a protective father, loving husband, caring son, dependable brother and fun uncle. To me, he's my brother and always will be. He never treated me as an outsider, but rather as a younger sister he grew up with. He's the first one there for the simple asks, help with a flat tire, to the difficult ones, telling my father in-law his cancer unfortunately returned. The true measure of someone's character is not by their words, but rather their actions. Nicholas's actions come from a genuine place in his heart, hoping what he does helps the people around him. Hoping he can make a tough situation, a bit more bearable. Hoping he can solve the unsolvable. Truly hoping he helped in some way. It's a quality of his I admire the most and something you don't see in many.

I think it's important to know that Nicholas is an amazing father, who raised a beautiful and brilliant young lady. When she was young, he prioritized his time ensuring she had the tools she needed to excel in school and the support to achieve all her goals. Teaching her to be strong, courageous and kind was obvious to us all. Attending all her performances, from musicals to award ceremonies- he was there and made sure he bought enough tickets for his family to come watch. He always made sure she knew he was and will always be there for her, a true girl dad! He said many times, having the honor to watch her graduate college with top honors was one of his best accomplishments.

I hope my words in this letter give you a little more insight to the kind of man Nicholas is. I wish there were a way to show you, but I believe in my heart that a simple conversation with him can already attest to what I have written here. His heart is kind, filled with goodness and love. Thank you again Judge Irizarry for your time and consideration for leniency for my brother.

Best Regards,

Caroline Mezzetta

# EXHIBIT M

January 2, 2025

Honorable Dora Lizette Irizarry
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
RE: USA v. Nicholas Arcuri
Case No: 24-CR-00225 (DLI)

Dear Judge Irizarry:

I hope this letter finds you well. I am writing to provide a character reference for (as well as request leniency of) Nicholas Arcuri, who is scheduled to appear before you in relation to Case No: 24-CR-00225.

I have had the pleasure of knowing Nicholas (Nick) for nearly a decade. We met in 2016 while working together, but have since formed a friendship, and because of this I've had the privilege of witnessing his immense kindness, support, and strength of character.

For me, the last several years have come with a handful of setbacks — both in work and in my personal life — and through each one I was able to turn to Nick for support and advice. He has consistently shown his empathy and willingness to help whenever I have needed it, and always without me having to ask.

Nick feels like a member of my extended family, and has even met members of my own family. On a recent trip to New York, my mother came with me to visit Capri, Nick's place of business, where he and I (still being regular collaborators) had a number of pieces being restored/reupholstered. To avoid us having to call a taxi, Nick picked us up at the ferry and then very thoughtfully took the time to give my mother a full tour of his workrooms. She came away from the experience extremely happy and impressed, and still frequently asks about him and his brothers, who she also met that day.

The facts about Nick's character are undeniable: He is kind, talented, hardworking, thoughtful, and professional. He is a good father, husband, and friend. I know these to be true from firsthand experience, and respectfully request that you, and the court, to take this into account when the time comes.

Sincerely,

Armando Aguirre
aa.aguirre@me.com